*210 OPINION OF THE COURT,
BY JüDGE MlLLS.
THIS is a warrant for a forcible entry and detainer, 011 a traverse in the circuit court, and verdict and rehdered for the plaintiff in the warrant, and brought up by an appeal.
Sundry questions were made, during the progress of the suit and on the trial, which we shall not particularly notice, because they were correctly decided by the *n^er*or court, and involved no unsettled question, and, a¡soi because it is to be regretted that the time of the circuit court should be taken up in discussing such questions, or that this court should be called to attend to them by the assignment of error. Such are the questions made on a motion to compel the plaintiff in the warrant, to make his election whether he would pros-this warrant or an ejectment, which he had brought for the same land; to exclude a conveyance offered in evidence, because the clerk, before whom it acknowledged, had not certified that the deed was sealed and delivered; and to instruct the jury as in case of a nonsuit, when there was evidence conducing to prove every point in issue.
After the whole evidence was given, various instrucwere asked for and given, in behalf of the plaintiff ,jn the warrant, and sundry instructions were prayed for on behalf of the defendants, some of which were gránted and others refused, which present the main points *211 for our consideration. We shall, however, pass over all those asked for and given on behalf of the plaintiff in the warrant; because they are applicable to the state of proof in the cause, and so fully conform to principles heretofore settled by this court, that we deem it unnecessary to state them, or to.quote the decisions on which they are founded. „
... tor/tee°whFlst a right of en-exists iu fentee^may" surrender to him the posu wn 1 s‘
The elder patentee, while r%ht of taking p0S.’ session withia the interference, acquires possession to the whole extent but"another has at’ the same time rightful or wrongful, he recept by a reg_ proceed-
Though such an entry by elder Patentee saves ventsStheHm itation from attaching, enables him teespass^and to extend his possession ed^o^hiT limits of his claim; yetit ble'hhntoTe tain the possession, if his adversary seas¡0^ fact; and if ■he is permit-two his possession’is complete as and*1 hiT ca'n’ not be removed, as he ^al'en'lo^0 sure. en°°"
*211 On the part of the defendants in the warrant, nine instructions were asked, three of which were given, and three more were so contrary to law, or inapplicable to the facts in the cause, that they were properly overruled, and will not be noticed. The remaining three, claim more attention.
The plaintiff, claiming under a survey, then made, patent on which issued afterwards, entered, settled and enclosed land, in the spring of 1798, and has resided there ever since. Covering his residence, were three adjoining elder patents, in different names; but two them claimed by the same man, one being issued in his name, and he claimed an equity in the other. The third patentee sued the appellee, and was successful, and he bought of this patentee the land, or part of it, recovered from him, and still holds it. Alarmed at his ill success against this patent, he negotiated with the claimant of the other two patents, a purchase of fifty-nine acres, covering the residue of his improvements,his, the woodland which he possessed still remaining, and the holder of these two patents not having entered thereon. This patentee, however, by action, evicted some of his neighbors, who did not interfere with'him, and claimed no part of his land, and entered upon these tenements so recovered, still leaving this forest, now the subject of contest, unmolested, until in June, 1820, a short time before this warrant was issued, the dants, who claim and hold the title granted by these two patents, enclosed the woodland, within the boundaries to which the plaintiff originally entered, under his junior grant, and outside of the plaintiff’s purchase of fifty-nine acres. To regain this possession, this rant is brought.
To defend themselves against the writ, the. dants, now appellants, attempted to show, that when appellee purchased the fifty-nine acres, there was an understanding or agreement, that the possession of the forest land not bought, should be surrendered, and *212 duced a number of facts and circumstances to show lhat h°th parties-acted in conformity with this understanding. Also, they attempted to prove an actual en« try within the interference, by enclosure. To support ^así ^)0'n,; ^e^ence’ the appellants, who stand in the shoes of the elder patentee, showed that they had extended a pasture fence within the interference, to the amount of two or three acres, in the spring of 1818, at a place called the Pond farm on the plat. We, however, lay this circumstance out of the question; for if the appellee was possessed of the interference until that time, his possession of twenty years was then complete, and the right of entry in the elder patentee, was then tolled, and the appellee could not be disseized by this encl°sure farther than it extended; and as that enclosure was made two years before the emanation of this warrant, the appellee could not, by law, recover, and has not reCovered restitution of that part in this pro-This must be left for a suit of another nature. But to support this defence, the appellants showec| that the improvements attached to one of the neigh-Coring tenements, which were evicted, as before stated, extended a small distance within the boundaries of the appellant. The boundaries of the land of the tenant wh° mat^e this improvement, did not extend into, but adjoined the appellee, and the tenant deposed in this that when he made this improvement, he extended it into the lines of the appellee by mistake of the place where the true line was, and did not intend it. According to the decision of this court in the case of Jff’Kinney vs. Kenney, 1 Marsh. 460, this act of the tenant could not possess him further than his actual encl°snre! and the recovery from this tenant, could not possess the evictor farther than the tenant held, and the court below so instructed the jury. But after the elder patentee gained this tenement, before the twenty years in favor of the appellee had expired, he, or one of the present appellants, claiming under him, extended this bnprovement about two poles further, into the line of the appellee, and cut and used timber on the rest of the interference, without objection from the appellee, also enclosed a spring within that interference, and Save the use t0 01ie the Neighboring tenants; and the appellants also proved, that the appellee was of meddling with the interference, or using *213 any thing from it, without leave of the appellants, and had expressed himself to this effect—that his land did not extend beyond the fifty-nine acres, which he had purchased.
An entry into part, by the riAit'of entry,°intending (o poswhofeG ucceeds’in acquiring poswhole1 °f th<!
An entry by the older his^rfht'is1, tolled, only gives him session to the ext®n* °f his
The counsel for the appellants, after this evidence, moved the court to instruct the jury: First, that if they believed the appellee had surrendered to the elder grant, the possession of all the land except the fifty-nine acres purchased by him, it was competent for him to do so, without writing, and that the possession so surrendered and given up, was legally attached to the elder patent, and the eider patentee had, therefore, possession in fact thereof; secondly, that an abandonment of possession might take place in two ways, the first by an open and voluntary renunciation, and secondly, by a disuse and dereliction of possession. The court below refused both these instructions, aiid in response to the last, instructed the jury, that the abandonment of possession might take place, either by a voluntary and open renunciation, or a disuse and dereliction of it, where no right of property existed, united with the possession; but if property in the freehold is claimed, it requires the same solemnity to abandon, that it does to transfer the property.
From overruling these instructions and giving the instructions that was given, it is fairly to be inferred, that the court intended to convey the idea, that possession, in this case, could not be transferred to the elder patentee, without writing, and that such surrender, without writing, would come within the act to prevent frauds and perjuries, and must be parted with, as the right is, by writing. At all events, this meaning must have been impressed upon the jury by the act or sayings of the court, whatever might have been intended. Here, at the time of the purchase of the fifty-nine acres, the elder patentee had not only the right of property, but the right of entry, and might have made his entry with or without suit, and acquired the possession held from him by the appellee. If the appellee agreed to surrender the possession under these circumstances, he was not selling or doing more than the law made it his duty to do, if required. Of course, such surrender could not come within the terms of the act, which declares, that no action shall be brought upon a contract for the sale of land, without writing; nor would such surrender *214 conflict with the act regulating conveyances, (1 Dig. L. K. 312,) which declares, that “no estate of inheritance or freehold, or for a term of more than five years, in lands or tenements, shall be conveyed from one to another, unless the conveyance be declared by writing, sealed and delivered.” Both these statutes suppose that the vender has an estate which he can sell or part with, and do not provide for cases where the party has no estate, but what he is bound to deliver up on demand. The appellee had neither the right, nor the right, of possession; but only a bare possession, the lowest estate known, and this he could give up to the true owner, without writing. Neither of these statutes were intended to regulate legal duties and liabilities, or to prescribe the manner of their performance; but to regulate contracts with regard to titles really saleable; and however the acts may apply to cases of the sale of a bare possession to a stranger, (into the extent of which application, we need not now enquire,) they certainly did not intend to prescribe the mode in which possession might be given up to the true owner. Therefore, although these intructions are awkwardly asked by speaking about abandonment, which is giving up to the world and not to a particular person, instead of a surrender, we cannot concur with the circuit court in refusing the first instruction and in giving the last, and we conceive it was competent for the appellee to agree to surrender the possession to the elder grant, and to execute that agreement by withholding from the possession, and yielding to the other’s use of it, without writing; and whether he did or did not do so, ought to have been left to the jury, as a matter of fact, upon the trial.
The next instruction asked'and refused, which we shall notice, is to this effect: That if the jury believed that the elder grantee, before his right of entry was foiled, did take possession in fact, inside of the appellee’s lines, claiming to be his boundary, peaceably, that his possession in fact extended to the limits of his claim, so possessed, and that they were, in that case, bound to find for the defendant.
■ There cannot be any doubt, that, according to common law, the elder grantee, by taking possession before the right of entry was tolled by the adverse possession of twenty years, within the interference, could acquire possession of the whole, and that such an entry, if made *215 with intention to take possession of the whole, would prevent the operation of the statute, as was decided by this court at the present term, in the case of Bodley vs. Hord, (ante 88.) Blit the statute which regulates proceedings, contemplates removing any .entry, either rightful or wrongful, against his consent who has, at the time, the possession in fact, as was held by this court, in the case of Chiles vs. Stevens, 3 Marsh. ¿40. Yet it does not thence necessarily follow, that the person making such entry, could not save his right of entry or prevent the limitation from attaching, or from justifying in trespass, or from extending the possession thus acquired, to the limits of the claim. As the statutd authorizes such proceedings to remove him, such right of entry could not enable him to retain the possession in this action, if his adversary had the possession in fact; and it may seem to follow, that the instruction was immaterial, and, therefore, the court could not have erred in refusing it. The instruction, however, was, no doubt, intended to meet the supposed state of fact, that the defendants or appellants had extended the improvement at Grove’s farm, with intention to take possession of the whole, as well as include the spring; and as these acts were done more than two years before the emanation of this writ, the question arises, whether, if the appellants gained the possession by this act, and the lapse of time, so that he could not be ousted by these proceedings, he would be subject to this or any subsequent writ, for any new extension of acts of ownership, which he might afterwards make from time to time? The answer to this question must determine the propriety of giving or refusing this instruction. The principle is too w.ell settled to admit of a doubt, that by an entry into part, by one having the right of entry, claiming or intending to possess the whole, he succeeds in acquiring the possession of the whole; and we are not disposed to make it yield to the provisions of the statute, further than is necessary to give effect to the act. Nothwithstanding the act allows such an entry to be removed, if attacked by these proceedings, within two years, we are unwilling to say, that such an entry does not still give the possession, or rather the seizin of the land held, to him who has the right; and if such person entering, has been permitted to remain until he cannot be removed, under this statute, we conceive that his possession is *216 complete as to the whole; and if he extends his actual enclosure from time to time, he cannot be subject to a new warrant for every shch extension.
As before observed, we do not apply this to the extension of tile Pond farm. That was after the expiration of twenty years, and must be.limited, of course, to the actual close; but we allude^to the extension of Grove’s farm. The intention of that ought to have been left to the jury, and instead of this last instruction, they ought to have been told, that if they found that entry into part, was designed to take the whole, and that entry was before the twenty years had expired, and more than two years before the date of this warrant, then the appellants were not subject to this warrant, for the new extension of the enclosure complained of. Nor would we he understood as excluding from the consideration of the jury, the enclosing the spring, although the freedom of water to every one, and the fact that the enclosure might have been made more for the purpose of excluding beasts, than human creatures, may much weaken the circumstance. The use of timber, as showing intention, may also here be applied, although it did not give seizin of itself, as that court rightly determined. We would, however, not be understood as giving any decisive opinion on the effect of the extension of Grove’s farm. We mean, that the intention with which it was done, coupled with the enclosure of the spring and the cutting of timber, ought to have been left to the jury, and then if they should find the entry and the intention of taking possession thereby, they ought to have been told, that the law was for the appellants; and the. judgment cannot be supported, because the defence was too much narrowed by the instructions given and refused, which we have noticed. We mean, as to the land then claimed by Hardage Smith, when these acts were done.
The judgment must, therefore, be reversed with costs, and the verdict be set aside, and the cause be remanded for new proceedings, not inconsistent with this opinion.