### WARREN vs. RITTER & RITTER.

1. A, having the possession of a lot, leases to B. The lease is afterwards cancelled, and the premises surrendered to A. In a few days C. is found in possession. A. not having abandoned his possession, this entry by C. is a disseizen, and will sustain an action of forcible detainer, upon the refusal of C. to deliver possession on demand to A.

2. The complaint alleging a forcible detainer on a certain day within three years before suit, is sustained by evidence of detainer on any day within such time.

3. An affidavit for a new trial, on the ground that a witness was absent, must shew the facts to be proved by such witness.

### APPEAL from St. Louis Circuit Court.

NAPTON, J., *delivered the opinion of the Court.*

This was a suit brought under the third section of the Statute of Forcible Entry and Detainer. The complaint filed before the Justice by the plaintiffs, alleged that Warren, the defendent, on the first of January, 1846, unlawfully detained certain premises described in the complaint, and continued to detain them, &c. The proceedings were removed by certiorari to the Circuit Court, and upon the trial before that Court, neither party requiring a jury, the defendant was found guilty, and the plaintiff's damages were assessed at $109. A motion was made in arrest of judgment, on account of an alleged variance between the complaint and the judgment, and because no demand in writing was made. This motion was overruled. The defendant also moved for a new trial, because the verdict was against law and evidence. In support of this motion, an affidavit was filed by the defendant, stating that he was confined to his house by sickness at the time of the trial, and could not therefore make an affidavit for a continuance, which he had designed doing—that a material witness was absent, and that he had not summoned him, believing him to be absent from the State. The affiant also stated that he believed he had a valid defence. The motion was overruled.

Upon the trial it appeared that the plaintiffs had been in possession of the premises for two or three years, claiming to own the same by purchase from one Chauncey Lewis; that they had built two houses on the tract, and inclosed it by a fence; that they had leased the premises to one O'Blenis, who took possession, and continued in possession until

about the first of May, 1846, when the lease was cancelled, and the premises re-delivered in the presence of the witness. A few days after this defendant was found in possession. In what way he obtained the possession did not appear. A notice in writing was served upon him, demanding the possession, and this suit immediately thereafter instituted.

The motion in arrest of judgment was properly overruled. One of the reasons in support of the motion, the want of a written demand, had no foundation in fact. The alleged variance between the judgment and the complaint, is supposed to be sustained by the fact, that the complaint alleged a detainer on the 1st January, 1846, and the proof showed that the defendant was not in possession until May of that year. This is no variance. It was only material that the entry and detainer should have taken place within three years before suit brought.

The affidavit, upon which the motion for a new trial was based, is insufficient. Where an application for a new trial is made upon the ground of an absent witness, the Court should be in possession of the facts expected to be proved, so that it may be seen whether his testimony would have been likely to change the result.

The principal ground taken for the reversal of the judgment, is, that the facts in evidence do not make out a case of unlawful detainer within the meaning of our statute. The third section declares holding over without force, after demand in writing, to be one species of unlawful detainer; and also, that "when any person, wrongfully and without force, by disseisen, shall obtain and continue in possession of any lands, &c., and after demand made in writing for the deliverance of the possession thereof, by the person having the legal right to such possession, his agent or attorney, shall refuse or neglect to quit such possession, such person shall be guilty of an unlawful detainer." The 16th section of the act says, that the "complainant shall not be compelled to make further proof of the forcible entry or detainer, than that he was lawfully possessed of the premises, and that the defendant unlawfully entered into, and detained the same." The testimony in this case, it is clear, does not make the defendant guilty of the first class of unlawful detainers; and the only question can be, whether he is in the condition of a person who has "wrongfully, and without force, by disseisen, obtained and continued in possession," after demand for the deliverance thereof.

The remedy of forcible entry and detainer, as prescribed in our statutes, is so dissimilar from the ancient proceeding known by this name, that it is in vain to look for aid in expounding our statute to the decisions of other courts, upon statutes with a similar title, but essentially differ-

ent in their provisions and objects. The proceeding was originally a criminal one, and was designed to prevent entries "with strong hand or multitude of people." It was afterwards extended to forcible detainers as well as forcible entries, and although the proceeding was by indictment or information, it resulted in a restitution of possession, where the defendant was found guilty. *Force* was, however, always an essential ingredient.

Our statute has very much extended the remedy, and the original object of the writ is almost entirely lost sight of. It declares that the only proof essential to maintain the action is, that the plaintiff was lawfully possessed, and that the defendant unlawfully entered and detained the premises in question. No force is necessary, it would seem, in any case, if this section is to be taken literally and by itself. But whatever construction may be given to this provision, as applicable to the cases enumerated in the second section of the act, it is clear that the third section distinctly embraces cases in which force does not constitute an ingredient. The difficulty is, in this last class of cases, to distinguish the circumstances which will authorize this form of action from those which would compel the party to resort to his ejectment. Where any person wrongfully, and *without force*, by disseisen, obtains possession, he is entitled to this writ. The term disseisen was not, I apprehend, intended to be used in a strictly technical sense, for it is only applicable to freehold estates; yet its use may be significant of the intention of the legislature to confine the remedy given, to cases where the plaintiff is in the actual possession of the premises at the time of the entry. It was this circumstance which distinguished disseisen from abatement and intrusion, which were also terms used by common law writers to express an ouster from the freehold. Hence it was provided that the entry was to be wrongful and without force, and upon the actual possession of another. "Disseisen of things corporeal, must be by entry and actual dispossession of the freehold; as if a man enters, either by force or fraud, into the house of another, and turns, or at least, keeps him or his servants out of possession." 3 Black. Com. 169. This provision in our statute was copied from a similar one in the Kentucky statute, and I observe that the courts in that State have given this interpretation to it. None but those who are in actual possession, when the entry was made, can, according to their decisions, maintain the writ. 5 Mon. 18; 5 Litt. 210. But actual possession does not mean that the owner must stand upon his land constantly to keep off intruders, or that he must keep his servants there. Any act done by the owner of land, after his tenant has

left it, indicating an intention not to abandon it, but to hold the possession to himself, will continue the possession in him. Brumfield vs. Reynolds, 4 Bibb. 388. The circumstances of the present case afford a very good illustration of the principle. The plaintiffs had taken possession of the premises, inclosed them with a fence, built houses thereon and rented them. Upon the surrender of the lease, and within a few days, (perhaps immediately) the defendant is found in possession. Can it be pretended that an owner of land loses his actual possession, because after the expiration of a tenant's term, and perhaps before the owner can find another, some intruder enters and takes possession? Whether the intruder be a mere trespasser, or have good title, can make no difference. If he has a title, he must get the possession by his ejectment. If he disseises the party in possession, and remains there for three years, the other party is then put to his ejectment. So it is held in Kentucky, that the disseisor may maintain this action against any one who enters on his possession without his consent, although that person should be the disseisee himself. 5 Litt. 215. The object of the statute is, not to permit the possession to be changed against the will of the party who has it, without the intervention of legal proceedings, and thus far its general spirit is conformable to the original design of the old British Statute of 5 Rich. 2., c. 7.

Upon the facts of this case, we think the plaintiffs were entitled to recover, and shall therefore affirm the judgment.