## MILLER *vs.* JONES' ADMINISTRATOR.

1. The action of the courts of probate in granting letters testamentary, or of administration, though conclusive in those cases in which they have the power to act, may, like the sentences of all other courts, be assailed for want of jurisdiction ; and whenever a suit is brought by a person upon his title as administrator, a plea averring facts which show that the court from which his letters issued had no jurisdiction to grant them, is good.

2. When a plaintiff declares upon his title as administrator by virtue of letters granted to him in this State, a plea averring that his intestate was not a resident of this State at the time of his death, and that he had no effects here at that time, does not show that the letters are void for want of jurisdiction in the court which granted them : the court of probate has jurisdiction to grant letters if property belonging to the estate is brought into the county after the intestate's death, although he was not a resident of this State and had no property here at the time of his death.—Clay's Digest, p. 303, § 33.

3. When application is made for letters of administration on the estate of a non-resident, if the petition alleges that " there is property within the county *belonging to the heirs of said estate,* which is likely to be wasted, or so disposed of as to be lost to the said heirs, unless some one should be appointed to administer upon said estate," such an allegation, *it seems,* is equivalent to an assertion of title in the estate ; but whether it is or not is immaterial, as it is not the *allegation* in the petition, but the *fact* that there is property in the county belonging to the estate, which gives the court jurisdiction to grant letters of administration, and the applicant is not held down to the ground stated in his petition.

4. In detinue for a slave, if the damages are not proved, a nominal sum only should be given ; and it is therefore error to instruct the jury, that, in the absence of proof as to the value of the slave's hire, they might give interest on the agreed value of the slave by way of damages.

5. A plaintiff in detinue may recover upon possession alone against one who has not as good a right to it as himself, and the defendant, in such case, cannot defeat his recovery by showing an outstanding title in a stranger, without connecting himself with it ; but when the plaintiff's right of recovery is based on his title, it may always be disproved by showing title in another.

6. If one who has possession of a slave disclaims property in himself, and holds it for the estate of his father, he is estopped from denying the right of pos-

session to be in the estate; and his declarations, in disparagement of his own title, are admissible evidence against him, or one claiming under him, to show the character of his possession.

7. When the defendant in detinue claims under a purchase at sheriff's sale from one who was estopped from denying the right of possession to be in plaintiff's intestate, he cannot set up an outstanding title in a third person without connecting himself with it.

8. By the Civil Code of Louisiana (p. 521, ch. 23, § 2) slaves without written title may be prescribed by a possession of fifteen years; and slaves with written title (Art. 3444), by a possession of five years.

APPEAL from the City Court of Mobile.
Tried before the Hon. ALEX. McKINSTRY.

DETINUE by Franklin G. Kimball, as administrator of Isaac Jones, deceased, against Thomas P. Miller, for a slave named Jane. The plaintiff's letters of administration, which were set out on oyer, were granted by the Probate Court of Mobile on the 28th day of December, 1852; and this action was commenced on the 30th of December in the same year. The defendant pleaded—

" 1. That the plaintiff is not, nor ever hath been, administrator of the rights and credits, goods and chattels, which were of the said Isaac Jones, deceased, in manner and form as he hath alleged," &c.

" 2. That the said Isaac Jones, deceased, had not, at the time of his death, a mansion-house, or any known place of residence, in the county of Mobile, or elsewhere in the State of Alabama; and that he did not die in the said county, or elsewhere in the State of Alabama, and had not any estate, or property, in the said county of Mobile, or elsewhere in the State of Alabama; and that the said Probate Court of Mobile county had no authority, or jurisdiction, to grant to said plaintiff administration of the goods and chattels, rights and credits of the said Isaac Jones, deceased; and so defendant saith, that said plaintiff is not, nor ever hath been, administrator," &c.

" 3. That the said Isaac Jones, deceased, during his lifetime, resided in the State of Louisiana, and died in said State, more than eighteen years before the commencement of this suit, to-wit, on the — day of —— A. D. 1833, at West-Feliciana, to-wit, in the county aforesaid; and that the said Isaac

Jones, at the time of his death, had not any mansion-house, or any known place of residence, in the said county of Mobile, or elsewhere in the State of Alabama, and did not die in the said county of Mobile, nor elsewhere in said State of Alabama, and did not have any estate or property in said county of Mobile, or elsewhere in the State of Alabama; and afterwards, (and more than eighteen years after the death of said Isaac Jones,) to-wit, on the 28th day of December, A. D. 1852, in said county, one Julia P. Canfield presented and filed in the Probate Court of Mobile county her petition, wherein she stated to the effect following—that is to say, that she, the said Julia P. Canfield, who was about to leave the State, and Elizabeth Ann, the wife of Newton Vonfleet, who resided in the State of Mississippi, and Robert O. Jones and James P. Jones, of the parish of West-Feliciana in the State of Louisiana, were the only heirs of Isaac Jones, who died in the said last-mentioned parish and State about the year 1833; that her father (*died ?*) leaving no will, and that letters of administration had never been taken out on his estate; that there was property within this county belonging to the said heirs of the said Isaac, deceased, which was likely to be wasted, or so disposed of as to be lost to the said heirs, unless some one should be appointed to administer upon said estate, to-wit, one mulatto girl, about eighteen years of age, and of the value (as petitioner believed) of about two thousand dollars;—and prayed the said court to commit the administration of said estate to the hands of such person, or persons as the said court might be pleased to select and appoint; and thereupon the said Probate Court afterwards, to-wit, on the — day of —— A. D. 1852, in said county, made an order appointing said plaintiff administrator of the goods and chattels, rights and credits, which were of said Isaac Jones, deceased, in his life-time;—all which will more fully appear by the record thereof, remaining of record in said Probate Court of Mobile county. And the defendant in fact saith, that the said Probate Court of Mobile county had no jurisdiction, or authority, to make said order, or to grant to said plaintiff administration as aforesaid; and so defendant saith, that said plaintiff is not, nor ever was, administrator," &c.

"4. That he doth not detain said slave," &c.

"5. That the said cause of action did not accrue at any time within six years next before the commencement of this suit," &c.

The plaintiff demurred to each one of these pleas separately, and his demurrer was sustained as to the second and third. The grounds of demurrer specified in the second plea are, "1st, because, though every allegation of matter of fact, upon which defendant bases his said allegation of want of jurisdiction in said Probate Court, were true, yet, if plaintiff's declaration be true, the said Probate Court had jurisdiction in the premises"; and, "2d, because, though it be true that said decedent, at the time of his death, was not a citizen of, and did not reside in, and had no property, estate, or effects, of any kind, nature, or description, in this State, yet, if after his death property belonging to his estate should be brought within the limits of the jurisdiction of the courts here, and the same should be here adversely held, or be wrongfully converted by strangers or third persons, the Probate Court of any county in this State wherein the same might be found would have jurisdiction to grant letters of administration, and letters of administration upon such a state of facts would be valid, and would confer upon the plaintiff the right to sue for such property; especially as said plea does not show a right of property, or a right to sue, in any body else than plaintiff; and so plaintiff says, that said second plea is bad, and no answer to his suit as administrator, &c." The same grounds of demurrer are specified, in short by consent, to the third plea.

The evidence which was adduced on the trial is all set out in the bill of exceptions, and shows substantially the following facts: The intestate died in Louisiana, in 1833 or 1834, possessed of several slaves, and leaving a widow and six children. Soon after his death his widow filed in the proper court, according to the Civil Code of Louisiana, a petition for a renunciation of the community of acquits and gains between herself and her deceased husband, praying that an inventory of his estate might be made, and claiming as her separate property the negroes of which he died possessed; and an inventory was accordingly made under an order of court, which shows that the intestate's separate property at

the time of his death, consisting of articles of household and kitchen furniture, was estimated at about $90. The slave now in controversy was born, after the intestate's death, of one of those which the widow claimed as her separate property. The widow subsequently married one Daniel O'Donoghue; and a suit arising between her and some of the intestate's children, the slave was run off from Louisiana by one Gayre, in consequence of said suit, and was afterwards delivered by one Wharton to Mrs. Julia P. Canfield, who was a daughter of the intestate. Mrs. Canfield brought the slave with her to Alabama, and had her in her possession in 1852, in Mobile county, when an attachment was levied on her, as the property of Mrs. Canfield, at the suit of Thomas P. Miller, the present defendant. Jones B. Canfield, who was a son of Mrs. Julia P. Canfield, and whose deposition was taken by the plaintiff, testified, that his mother never claimed the slave as her own property, but as the property of her father's estate; and that she told Miller, in the presence of witness, "that the girl did not belong to her, and that she held her as the property of the estate of Jones." The slave was sold at public auction, on the 24th of December, 1852, under an order of court rendered in said attachment suit, and was purchased by the defendant, for the sum of $850; and she was then delivered by the sheriff to said defendant, and a bill of sale executed for her. It was admitted that the value of the slave was $850, but there was no proof of the value of her hire. "For the purpose of showing what was the law of Louisiana in relation to the rights of married women, and the inheritance and succession of the estate of deceased persons, and in acquiring title to slaves by prescription, the defendant read in evidence to the jury, from the Civil Code of Louisiana, the following sections, viz., Nos. 866, 867, 870, 873, 875, 876, 877, 878, 881, 882, 883, 884, 898, 928, 929, 934, 935, 936, 937, 939, 996, 1007, 1008, 1010, 1034, 1049, 1088, 1089, 1090, 1105, 982, 1006, 1025, 1055, 2314, 2315, 2317, 2369, 2377, 2380, 2382, 3492, 3487, 3420, 3421, 3437, 3439, 3444, and 3447; and the plaintiff, for the purpose of showing what was the law of Louisiana in relation to the same subjects, and that the said laws were different from the law as contended for by defendant's counsel, read to the jury certain other sections from the

Civil Code of Louisiana; and the said Civil Code was declared by the court to be in evidence before the jury."

On this evidence the court charged the jury as follows:

"That to entitle the plaintiff to recover in this case, he must show that he is entitled to the possession, or that he has the title with the right of possession.

"That the question of title in this case was between the title or right of possession of the plaintiff and the title or right of possession of the said Julia P. Canfield, through whom the defendant claimed; and if the said Julia P. Canfield, whilst in possession of the slave sued for, stated that she held the said slave for the estate of said Isaac Jones, deceased, that declaration was evidence for the plaintiff that the possession she held was the possession of Jones' estate; and if Mrs. Canfield held the possession of said slave for the estate of said Jones, and if the said estate had the title or right of possession, the title of Mrs. O'Donoghue could not defeat the action, unless the defendant connected himself in some way with her title.

"That the defendant could not successfully defend himself in this action by showing an outstanding title in any third person, other than Mrs. Canfield, without connecting himself with such outstanding title.

"That by the laws of Louisiana, where no written evidence of title was shown, fifteen years' possession was necessary to give title to a slave by prescription.

"That, if the jury found for the plaintiff, they might give him hire for the negro whilst in the defendant's possession; and in the absence of any proof as to what was such hire, they might allow him interest on the agreed value of the slave.

"To all these charges the defendant excepted, and asked the court to give the following charges:

"1. That, if the jury believe from the evidence that plaintiff's intestate, Isaac Jones, resided and died out of the State of Alabama, and had not at the time of his death any mansion-house or known place of residence in the State of Alabama, and had no property or effects in the State of Alabama at the time of his death, the Probate Court of Mobile county had no jurisdiction, on the 28th December, 1852, to grant letters of administration on his estate to the plaintiff, and the

Miller v. Jones' Adm'r.

grant of letters of administration by said court to the plaintiff was void, and plaintiff was not (and is not) in law, by force of that grant, the administrator of the estate of said Isaac Jones, deceased, and the jury should find for the defendant.

".2. That, if' the jury believe from the evidence that the slave sued for in this action was born after the death of Isaac Jones, deceased; and that said Jones lived and died in the State of Louisiana; and that by the laws of Louisiana, as in evidence before the jury, and by the other evidence before them, they further believe that the mother of the said slave was not the property of the said Isaac Jones, deceased, but was the separate property of the wife of said Jones,—then the jury should find for the defendant.

"3. That, if the jury believe from the evidence that the slave sued for was held in the State of Louisiana, for more than five years before the bringing of this suit, adversely to the claim of the heirs and other representatives of the said Isaac Jones, deceased; and that by the laws of Louisiana, as in evidence before the jury, such adverse possession gave a title by prescription to the slave to the person so holding such adverse possession,—then the plaintiff cannot recover the said slave in this action, and the jury should find for the defendant.

"4. That in this action the defendant may show, under the pleadings, an outstanding title in any third person; and if, from the evidence, such outstanding title in a third person is shown, the plaintiff cannot recover.

"5. That the fact that the defendant sued out an attachment against Julia P. Canfield, and under that attachment the said slave now sued for was levied on by the sheriff in the possession of said Julia P. Canfield, and was afterwards sold by the sheriff under an order of court made in said attachment suit, and at such sale was bought by the defendant, and was delivered to him by the sheriff,—these facts do not prevent the defendant from defending himself in this case by showing an outstanding title in any third person."

The court refused each one of these charges, and the defendant excepted to each refusal; and he now assigns for error the rulings of the court, as above set out, in sustaining the

demurrers to his second and third pleas, in the charges given, and in the refusals to charge as requested.

Wm. Boyles and Wm. G. Jones, for the appellant:

1. The grant of letters of administration to the plaintiff was made by a court having no jurisdiction: it was not merely voidable, but absolutely null and void; and so the plaintiff was not, and is not in law, the administrator of Isaac Jones, deceased. In England, the granting of administration appertained, according to circumstances, either to the Ecclesiastical Court of a bishop, or of an arch-bishop. If it was made by a court not having jurisdiction, it was absolutely void.—1 Williams on Ex'rs, 175, 181, note y; Prince's case, 5 Coke's Rep. 30; The King v. Sutton, 1 Saund. R. 274, note 3, and 275, note c. The same doctrine has been repeatedly held in the United States.—Griffith v. Frazier, 8 Cranch 9; Ex parte Baker, 9 Leigh 719; Wales v. Willard, 2 Mass. 120; Sigourney v. Sibley, 21 Pick. 101; Ewing v. Sneed, 5 J. J. Marsh. 459; Creath v. Brent, 3 Dana 129; Wilson v. Frazier, 2 Humph. 30; Echols v. Barrett, 6 Geo. Rep. 443; Slade v. Washburn, 3 Ired. 557; Springs v. Erwin, 6 ib. 27; Johnson v. Corpenning, 4 Ired. Eq. 216; Gayle & Pitts v. Blackburn, 1 Stew. 429.

The Probate Court in Alabama is a court of limited and special jurisdiction. Hence its jurisdiction to make any order must be shown by the record; and if it makes an order in a case in which it has no jurisdiction, such order is not merely voidable, but absolutely null and void.—Gayle & Pitts v. Blackburn, 1 Stew. 429; Taliaferro v. Bassett, 3 Ala. 670,674; Johnson and Wife v. Collins, 12 ib. 322; Bishop's Heirs v. Hampton, 15 ib. 767. The grant in this case was made on the 28th December, 1852, before the new Code went into operation. The Probate Court had no jurisdiction, except such as was conferred by statute. These statutes are found in Clay's Digest 301, § 22, and 303, § 33: they give jurisdiction to grant letters of administration—1st, to the Probate Court of the county in which the decedent had a mansion-house or known place of residence; 2d, if he had no such place of residence, to the Probate Court of the county in which he died; or, 3d, in which his estate, or the greater part thereof,

shall be.   This case does not come under either of these heads.
The law provides for administration, where any person died
in this State, or died out of the State, having property in this
State at the time of his death.   It did not provide for the
case of a foreigner, living and dying out of this State, and
having no property in this State.   This is the manifest mean-
ing of the words and spirit of the statute.   The same statute
has been expressly held in Mississippi not to apply to cases
in which the decedent had no property in the State at the
time of his death, though property which had belonged to
him was afterwards brought into the State.—Wright v. Beck,
10 S. & M. 277, 281.

When a plaintiff sues as administrator, the defendant may,
by special plea, set out facts showing that the grant of admin-
istration to the plaintiff was void, either for want of juris-
diction in the court making it, or for any other cause.   The
same facts may sometimes be shown under the general plea
of *ne unques administrator;* and where (as in this case) the
property never was in possession of the decedent, or the ad-
ministrator, they would probably be a good defence under
the general issue of *non detinet*, which puts the plaintiff on
proof of his title.—2 Stark. Ev. 315, 317; 3 Chitty's Pl. 940-1,
and notes; Stokes v. Bates, 5 B. & C. 491; 2 Greenl. Ev. 341-2.

If these principles are correct, the court erred in sustaining
the demurrers to the second and third pleas, and also in re-
fusing to give the first charge asked by the defendant.

2. As Isaac Jones lived and died in Louisiana, leaving his
property in that State, and his widow, his children and heirs
living in that State, the right and title to such property are
governed by the laws of Louisiana.   By the laws of Louisiana,
a married woman may have and hold property separately
from her husband.   If after his death she renounces the ac-
quits and gains of the common property, and causes an inven-
tory of his property to be made, she is entitled to take and
hold her separate property.—Civil Code of La., arts. 2314,
2315, 2379, 2380, 2382, 2384.   The evidence is positive, that
the negro Jane was not born until after Jones' death ; and it
conduces to show, that the mother of Jane was the separate
property of the widow, and was claimed and held as such by
the widow for many years, (more than five years,) in Louisiana,

adversely to the heirs of Jones, who lived also in that State. The effect of this claim and possession of the widow is not weakened by the fact of there having been no administrator of Jones' estate appointed in Louisiana. There was no necessity for any such appointment : by the law of Louisiana, the right and title to all the estate, real and personal, of a decedent, is cast on the heir by the mere operation of law, just as real estate is by the common law ; and the heir may sue for any of it immediately.—Civil Code La., arts. 866, 867, 870, 873; 875, 876-884, 898, 928, 929, 934, 935, 936, 939, 1007, 1010, 1088, 1090.   The heirs of Jones then, immediately upon his death, and without any grant of administration, might have sued in Louisiana any person holding any of Jones' property, real or personal, adversely to them.   By the Louisiana law, title to slaves is acquired by prescription, by an adverse possession of five years in good faith (Civil Code La., arts. 3420, 3436, 3437, 3438, 3439, 3444, 3445, 3447) ; and prescription runs even against a vacant succession (*Ib.*, art. 3492.)   The evidence conduced to show, first, that the slave never was the property of Jones, or of his estate, but was the separate property of the widow ; or, even if this was not sufficiently shown, it conduced to show, secondly, that the widow claimed and held it in good faith adversely to Jones' heirs in Louisiana, for such a length of time as gave her a title by prescription.   That this is a good defence, against a suit brought by Jones or his representatives, for the property in this State, is well settled.—Goodman v. Marks, 8 Porter 84; Howell v. Hair, 15 Ala. 194; Jones v. Jones, 18 *ib*. 248, 253; Newcombe v. Leavitt, 22 *ib*. 631.

3. In detinue, the defendant may defeat the plaintiff's action by showing an outstanding title in a third person.—Dozier v. Joyce, 8 Port. 303; McCurry v. Hooper, 12 Ala. 823; Tanner v. Allison, 3 Dana 422.

4. There was nothing in the proceedings of Miller under the attachment to constitute him a trespasser, so as to prevent him from defending himself in this case by showing a superior outstanding title in a third person.

5. There was no evidence whatever given to the jury as to the hire of the negro, or the worth of her hire or services whilst in the defendant's possession.   It was undoubtedly

error for the court to charge that, in the absence of any such proof, the jury might give interest on the agreed value, in lieu of hire.

JOHN T. TAYLOR, *contra :*

1. The letters of administration were not void on the ground that there was no property in the county of Mobile at the time they were granted. It is true, the record in one place alleges that the slave Jane, the property in question, was the property of the heirs of Jones, instead of alleging it to be the property of his estate; but it is clear, on a proper view of the whole record, that the latter allegation was intended,— that the proof sustained it, and that the court viewed it in that light, and assumed jurisdiction on that ground. Nor were the letters void on the ground that there was no property in the county at the time of the death of Jones. The proper and only reasonable construction of the section of the act relied on by the appellant, is, that there shall be property in the county at the time the letters issue. But, giving to the section the construction for which the appellant contends, still it does not affect this case. General powers in all orphans' court matters are given to the probate judges; and by section 31 (Clay's Dig., p. 303) and the 8th section of the act of 1850 (p. 22), the jurisdiction to issue letters of administration is unrestricted, and given to all the county-court judges. If this section stood alone, the powers in this case could not be denied. The 22d section of the act in Clay's Digest (p. 301) merely restrains the general power in certain cases: when a person dies out of the State, and has no residence in the State, but has property in a particular county at the time of his death, then the court of the county in which the property is shall have the prior and only right to issue letters; but in a case where the intestate does not die in this State, and has no place of residence in this State, and no property here at the time of his death, then this 22d section, if the appellant's idea of it be correct, does not bear upon it, and leaves the general power given by the 31st section in full force. The 22d section is simply to establish prior rights, in certain cases, in certain counties. My position, then, is this: In a case where the deceased died out of the State, and had no residence

and no property in the State at the time of his death, and no letters have been granted in any other county in this State or any other, and property is afterwards found in one county in this State, and no fraud is charged,—then the Probate Court where the property is at the time the letters issue has jurisdiction whenever a necessity is shown.   In this case a necessity is shown, by the statement in the record that the property would be lost or converted unless an administrator was appointed to protect it.   Besides, the record does not show that the property was in Louisiana at the time of the decedent's death : it uses the words of the act, and must bear the same construction, and therefore be understood to allege that the property was in Alabama at the death.

2. The proof shows that Mrs. Canfield received the property from and as belonging to the estate ; that she never claimed it as her own, but held it as the estate's ; and that the appellant levied on it as Mrs. Canfield's, had it sold as hers, and bought it, knowing the character of her possession. Mrs. Canfield was clearly estopped from setting up an outstanding title, and the appellant cannot assume a better position than she had.

3. But, even if the appellant should be allowed to make this defence, he entirely failed to make it out; and the court therefore correctly refused the charges asked on this point. . The proof is positive that the legal title was in Jones ; and the court will see that, giving to the appellant's evidence its fullest scope, it only shows a claim or assertion of title, without any proof of a title in fact.   It is true, the evidence alludes to a slave named Jane, once in possession of Mrs. O'Donoghue; but if this is the negro now sued for, which is not shown, still she got the possession from Jones, or took it after his death. But (it is said) she kept this possession until it ripened into a title by limitation under the laws of Louisiana ; and the court was asked to charge, that five years would give title under that law.   This charge was properly refused, on two grounds, viz., 1st, the full possession was not proved ; and, 2d, because it required fifteen years instead of five, (Civil Code, arts. 3433, 3437, 3438, 3439, p. 521,) and one setting up this prescription must prove a continuous, uninterrupted possession for the full time ; which was not done in this case.—Art. 3466,

p. 525. The statute of five years only applies where a written title is shown and proved.—Arts. 3437, 3439, 3452.

GOLDTHWAITE, J.—In England, as the power to grant letters testamentary, or of administration, is lodged exclusively in the Ecclesiastical Courts, the act of those courts in cases in which they have the power to act, has always been held conclusive (Cow. & Hill's Ph. Ev., 1 vol. 343) ; and the same rule is applied in the same cases in this country, to those courts to which this power is given by statute.—Wells' Will, 5 Litt. 274 ; Brown v. Gibbon, 1 Nott & McC. 236 ; 1 Pick. 535, 541 ; 14 *ib.* 280. But the sentences of these courts, like those of every other court, are assailable for want of jurisdiction, and whenever a suit is . brought by one on his title as administrator, if the facts in the plea show that the court which granted the letters had no authority to act, the plea is good.—Buller, J., in Allen v. Dundas, 3 Term R. 130; 2 Cow. & Hill's Ph. Ev. 364. The ground on which the second plea rests is, that the court had not the power to grant letters in any case where the decedent was not a resident of, and had no effects in this State at the time of his death ; but in Robinson v. Robinson, 11 Ala. 947, we held directly the contrary, and we are satisfied with the correctness of this decision. The case last cited disposes of the second plea, and makes the third rest, alone, on the fact that the application for letters did not allege that there was any property belonging to the estate of the deceased within Mobile county. We incline to the opinion, that, looking at the whole application, and applying the rules of construction with the liberality which we think should obtain in regard to proceedings in the Probate Court, the allegation of property in the heirs was equivalent, under the circumstances, to an assertion of title in the estate. But it is unnecessary to go so far ; for we are satisfied, that, giving to the application the construction contended for by the appellant, the applicant would not have been held down to the ground stated in the petition. It was not the allegation of the petition which gave the court authority to act, but the fact that there was property belonging to the estate of the decedent within the State at the time the letters were issued ; and as the plea does not negative the existence

of this fact, it fails to show the want of jurisdiction. The view we have taken is conclusive as to the second and third pleas and the first charge requested.

In relation to the other points : The case must be reversed on the instructions given to the jury, that in the absence of any proof as to what the hire of the slave sued for was worth, they might give interest on the agreed value of the slave by way of damages. The damages, in an action of detinue, are for the detention of the thing sued for ; and in case of slaves, the value of the hire is the best, if not the only criterion of the injury occasioned by the detention. These damages should be proved, and if not established by the evidence, a nominal sum only should be given. It is true, that the hire of slaves is generally worth the interest on the money ; but upon the same principle, if a slave was generally worth one hundred dollars, or a horse thirty, we might dispense with any proof of the value whatever. Such a rule would be entirely too loose, especially in cases in which more satisfactory evidence could always be offered ; and in such cases the failure to offer testimony would, upon a familiar principle, operate against the party on whom the law cast the *onus*. The measure of value which the law fixes for the use or detention of money, cannot, with any propriety, be applied as the rule of compensation for the use of a slave.

The question we have just determined not going to the merits of the case, it is proper, with reference to the conduct of the cause on another trial, to consider the other questions presented upon the record ; the principal of which is, as to the right of the appellant to set up the title of Mrs. O'Donoghue in order to protect himself. In discussing this question, we do not consider it necessary to pass upon the evidence contained in the record. It was treated by the court below as conducing to establish such a title, and we shall so consider it.

It is certainly true, that in the action of detinue, the plaintiff may recover upon possession alone, against any one who has not as good a right to the possession as himself. He recovers on the right he has to have the thing delivered to him. Where the possession alone would entitle the plaintiff to a recovery, we do not see how the other party could defeat it,

Miller v. Jones' Adm'r.

by proving title in a stranger unless he connected himself with it, thus proving that he had the better right. But where the claim is based not upon possession, but on the title, there the claim may always be disproved by showing that the title is not in the plaintiff, but in another. Thus, if the plaintiff was to show that he was the owner at a period anterior to the suit, the defendant might well show that he had parted with the title before the commencement of the action, and thus defeat a recovery,—not by showing any right in himself, but by proving that the other party did not occupy a position which would entitle him to recover. In the present case, therefore, the defendant below might properly have set up the title in Mrs. O'Donoghue, unless he was estopped by the act of the party under whom he claimed, or unless the possession of the plaintiff prevented him. Conceding that Mrs. Canfield actually held the possession of the slave for the estate of Jones, we think she would be estopped from denying the right of possession to be in that estate, because such a denial would be inconsistent with the relation she occupied. It is clear, also, that her declarations to that effect, while in possession of the property, would be evidence as to the character of her possession,—not conclusive,—but entitled to such weight as, under all the circumstances, they deserved ; but if they satisfied the jury of the fact that she so held, then her possession would be the possession of the estate, and the appellant, claiming through her and obtaining her right only, could not set up a title in a third person, at least without connecting himself with it.

Applying these principles to the charges given, the first charge was correct. The second was erroneous, as it asserted, in effect, that although the claim of the plaintiff was based upon neither the title nor the possession of the estate of Jones, a recovery could be had upon the evidence disclosed by the record. We say this was the effect of the charge, for the reason that, if the evidence proved that Mrs. O'Donoghue, as the wife of Jones, held a separate estate in the mother of the slave sued for, then, on the death of Jones, by renouncing the acquits and gains of the common property, and causing an inventory to be made of the property of her deceased husband, she acquired a perfect title to her separate property

(Civil Code of Louisiana, arts. 2314, 2315, 2379, 2380, 2382, 2384) ; and if the jury did not find that Mrs. Canfield held the possession of the slave for the estate of Jones, the right of the administrator to recover would turn upon the fact as to whether the title was in the estate ; and this would be disproved, by showing the title to be in another, without connecting himself with it.

In relation to the laws of Louisiana upon the question of title by prescription, we think the ruling of the court was correct. By the Civil Code of that State, (Art. 2415,) it is required that all sales of slaves "shall be made by authentic act, or under private signature" ; and all verbal sales of that species of property are declared null. By reference to the several articles of section 2, chapter 23, (page 521,) it will be seen, that slaves without title cannot be prescribed, except by a possession of fifteen years. Article 3444, which was relied on by the appellant, allows a prescription for slaves with title by a possession of five years ; but we construe this article with reference to article 2415, which, in effect, declares verbal titles to be void.

What we have said will be sufficient for the correct conduct of the cause upon another trial, upon the questions presented by the present record.

Judgment reversed, and cause remanded.