BASIL W. ALEXANDER *et al.*, Respondents, *v.* RUSSELL H. WESTCOTT, Appellant.

1. *Unlawful Detainer—Landlord and Tenant.*—The time of the service of the notice of the demand for possession of the premises is the time of the demand. Where the premises are let for a fixed period of time, no demand of possession is necessary to authorize the bringing of an action for the unlawful detainer.

2. *Unlawful Detainer—Complaint.*—A complaint in unlawful detainer, alleging that the plaintiffs were the owners and entitled to the possession of the premises; that they leased the premises to defendant for one year from a given date, and that defendant wilfully continued to hold and does hold over the possession after the expiration of the time the premises were demised, is sufficient.

*Appeal from St. Louis Land Court.*

Defendant and one Hutton, on July 21, 1851, received a

lease for ten years of a lot in the city of St. Louis, from the trustees of Sarah Orme. Subsequently plaintiffs became the owners of the premises, and at the expiration of the lease re-let the premises, by parol, to defendant for one year, upon the same terms with the written lease. At the end of the year, plaintiffs, in writing, demanded possession, and defendant refusing to quit, they sued in unlawful detainer. The complaint alleged that they were owners and entitled to the possession of the premises, and, after describing the house and lot, stated that they "leased said premises to the defendant and one Hutton for one year from 21st July, 1861, and that defendant wilfully continued to and does now hold over the possession of said premises after the expiration of the time they were demised, although due demand in writing had been made upon him for possession."

In the Land Court, defendant moved to dismiss on the grounds—1. Variance between the demand and complaint; 2. The complaint was not within the statute; 3. Duplicity in complaint;—which motion was overruled and excepted to. The plaintiffs proved the parol leasing for one year, and the demand of possession, and the value of the rents. Defendant read in evidence the original lease, and then offered to prove that, after the lease was made, the improvements were spoken of between them; that it was verbally agreed that the lessees were authorized to remove their improvements at the end of the lease, and that they could also remain on the ground longer, at valuation, if the lot was not wanted; which was objected to by the plaintiffs on the ground that the lease must speak for itself. The objection was sustained and exceptions taken.

The defendant then asked the following instructions, which were all refused except No. 4, which was given: .

1. The court declares the law to be, that if it is shown from the evidence that P. O. D. Byrne, acting as agent for plaintiffs, on the 21st of July, 1861, verbally authorized Westcott and Hutton to continue in possession of the lot in dispute one year from that date, upon the same terms as the written lease

8—VOL. XXXVII.

read in evidence in this case; and if they further find that the plaintiffs had not been in actual possession prior to that date, and after the date of said written lease, then the plaintiffs cannot recover.

2. The court further instructs the jury, that if they believe from the evidence that James Brackenridge, the lessor in the written lease given in evidence, died before the termination of said lease, and there was no unlawful detainer before his death, and no devise, grant or assignment by him, and no unlawful detainer by holding over at the termination of said lease, then the legal title to said lot so leased passed to his heirs, and was not in any manner within the provisions of the 36th and 37th sections of the act "Forcible Entry and Detainer"; and if the plaintiffs were not the heirs of said Brackenridge, and claimed themselves to be the owners of said premises at the termination of said lease, and through their agent authorized said lessees in said lease to continue one year longer, although they may have acquired the interest of a portion of said heirs, that then said authority was illegal, and they cannot on that ground recover.

3. The court instructs the jury that if the lot in question was leased to Westcott and Hutton jointly, as shown by the written lease read in evidence, and they held the same in common after building the house upon the lot, and there had been no partition by them shown by the evidence except their respective occupation, separately, of the two lower rooms, and that said Hutton sold his undivided interest in said premises (lot and building) prior to the 21st day of July, 1862, to John L. Ferguson, one of the plaintiffs in this suit, and delivered him possession of one of the lower rooms, and there has been no partition between said Ferguson and Westcott, then the plaintiffs cannot recover.

4. The court instructs the jury that the plaintiffs were required to establish by proof every material allegation in their complaint. The complaint alleges substantially that the plaintiffs leased to Westcott and Hutton for one year from 21st of July, 1861, the house on said lot. If the plaintiffs have failed

to prove a lease of the house as alleged, this will prevent a recovery. (This was given.)

5. The jury are further instructed, that if B. W. Alexander, one of the plaintiffs, has parted with his interest, as set up in the complaint, since this suit was instituted, they must find for defendant.

The court then gave judgment of restitution, with double damages and monthly rents.

*P. C. Morehead*, for appellant.

I. The complaint is not within section 3 and 16 of the forcibly entry and detainer act of 1855, art. 1. The demand is dated 19th July, 1862, and alleges that the lease terminated on that day. The complaint alleges that the lease terminated on the 21st July, 1862.

II. All persons in actual possession should have been made parties. The complaint is against Westcott for all the premises, including the house. Ferguson, one of the plaintiffs, was in actual possession of the west lower room, and had been before the year terminated. There is no proof that Westcott was in actual possession of any part but the east lower room, and it is also clear in evidence that the other part of the house was in the actual possession of the other persons. (32 Mo. 315.)

III. Defendant's first instruction was improperly refused. The cases of 26 Mo. 581 and 28 Mo. 65 are seemingly in conflict on this point. The record, however, does not present a case to which the latter applies, but a case unaffected by the act of forcibly entry, &c., of 1855, and leaves the principle settled by the first case and cases cited, uninterrupted, that a prior actual possession is necessary to sustain unlawful detainer (such has been the construction of sections 3 and 16 of said act) "by the person having the legal right to such possession." (§ 3.)

IV. The fact appearing in evidence that they never had been in possession is irresistible ; or could only be overcome by showing, as their complaint stated, that they were own-

ers; by showing, as they had a right to do, under the act of 1855, § 40, art. 1, that they were the representatives in some legal way of Brackenridge or Mrs. Orme, and placing themselves within the case of 28 Mo. 65. (6 Taunt. 202, 1815; 1 Marsh. Eng. R. 541, 1815; 1 Bing. 38, 1822; 8 Barn. & Cress. 475, 1828; 1 Penn. 402; 6 Watts, 44; 1 Rawl. 408; 6 Barr., Penn. 163; 15 Ga. 491; 2 Dana, 213; Sheppard's Touch. 254; §§ 36 & 37 Forcible Entry, &c., 1855, art. 1.)

V. A tenant in common cannot maintain unlawful detainer against his co-tenant. On or about the 14th of July, 1862, Ferguson, one of the plaintiffs, bought the undivided interest of Hutton in the premises, and received actual possession of the west lower room; yet Westcott was sued for all the premises. (12 Mass. 153.)

VI. The court erred in refusing the proof offered by defendants as to the improvements. (28 Mo. 70; 1 Starkie, 267; 15 Mass. 85; 3 Atk. 388; 5 Johns. 273; 9 Pick. 298; 3 Metc. 486; 13 Pick. 446; 9 Cush. 31; 14 Serg. & R. 293; 13 La. 136; 16 Serg. & R. 424; 7 Rob., La. 520; 5 Day, 428; 5 Gill. & J. 147; 14 Ga. 429; 1 Greenl. Ev. § 304; Kirby, 399; 6 Whar. 303; 1 Serg. & R. 464; 1 Pick. 48-9.)

*Lackland, Cline & Jamison,* for respondents.

I. The term was fixed by agreement; it was one year. It required no notice to end it. The defendant knew as well as the plaintiffs that his holding over after the termination of the term for which the premises were demised, or let, constituted his guilt. (7 Mo. 50; 8 Mo. 270; 11 Mo. 605 & 354; 14 Mo. 426; 19 Mo. 310.)

II. Appellant had no right to the improvements on the leased premises; and even if he had, that right was lost to him for not exercising it during the term, and would in no event give the appellant any pretext in law to detain the premises for any time, however short, after the expiration of the lease.

III. The appellant's instructions were all properly refused by the court below. They seek in behalf of the tenant to

question his landlord's title; this he is estopped from doing; he cannot rent the demised premises of his landlord, and on the next day deny his title and claim to hold for himself, or under any one else. (§ 26, art. 1, ch. 66, R. C. 1855; Stone v. Malot, 7 Mo. 158.)

HOLMES, Judge, delivered the opinion of the court.

This was a complaint before a justice of the peace by the landlords against their tenant for an unlawful detainer in holding over the leased premises after the expiration of the tenancy, under the third section of Art. I. of the "Act concerning forcible entries and detainers" (R. C. 1855, p. 787). The case was removed by *certiorari* to the St. Louis Land Court, and upon a trial had there judgment was rendered for the plaintiffs for a restitution of the premises and double damages, and double monthly value from date until restitution made.

The defendant made a motion to dismiss the complaint for duplicity and insufficiency under the statute, and for a variance between the complaint and the demand in writing. There was no substantial foundation for these objections. The complaint contained all the material allegations required by the third section of the act to constitute a holding over of the premises by the defendant, wilfully and without force, after the termination of the time for which they were let to him. (Warren v. Ritter, 11 Mo. 354; Ish v. Chilton, 26 Mo. 256.) The matter of variance between the complaint and the written demand was wholly immaterial, even if there had been any variance. The date of the notice was unimportant: the time of service is the time of demand. In this case, no demand in writing was at all necessary. (Young v. Smith, 28 Mo. 65; Andrae v. Henritz, 19 Mo. 310.)

The tenants had received the possession of the premises from the plaintiffs at the termination of the written lease the year before, and they had accepted the new tenancy and paid rent to the plaintiffs for another year. The plaintiffs were entitled to recover back this possession. The evidence showed

that the defendant was in possession of the premises, occupying all but one room on the ground floor, which did not appear to have been in the occupancy or possession of any one else. We do not see but the verdict was fully sustained by the evidence. The matter of title and the ownership of the improvements were not a proper subject of inquiry in this action. (Stone v. Malot, 7 Mo. 158.) We think the instructions asked for by defendant were properly refused. Double damages may be awarded in such cases. (R. C. 1855, p. 1012, § 9; Ish v. Chilton, 26 Mo. 256.)

Judgment affirmed. Judge Wagner concurs; Judge Lovelace absent.