MAY TERM.
1842.

BURDYNE v. MACKEY, Executrix of MACKAY.

Burdyne
v.
Mackey, Ex.

1. An executor or administrator, as such, cannot maintain an action of ejectment for lands of which his testator or intestate died siezed.

2. If an executor or administra·or brings suit in his representative capacity, he cannot recover by virtue of any individual interest he may have in the matter in controversy.

Error to the St. Charles Circuit Court.

CAMPBELL for Plaintiff in Error.

BATES for Defendant in Error.

*Opinion of the Court, delivered by Scott, Judge.*

J. Mackey *as executrix* of James Mackey, deceased, instituted an action of ejectment in the St. Charles circuit court against Amos Burdyne, who, it was proved, was in possession of the tract of land in controversy. Mackey obtained a verdict and judgment below, and the cause is brought here by writ of error. James Mackey, it seems, claimed a large tract of land, partly situated in St. Charles county, by virtue of a Spanish concession and survey, of which the lot in dispute is a parcel. This claim was presented to the first board of commissioners appointed to determine the validity of French and Spanish claims to land in the then District of Louisiana, now State of Missouri, and was rejected ; afterwards it was reported for confirmation by the board of commissioners created by an act of congress of July 9th, 1832, and was confirmed by a law of the 4th July, 1836, to James Mackey, or his legal representatives. During the interval between the first rejection and the ultimate confirmation of this claim in 1822, James Mackey departed this life, leaving a will, dated 16th March, 1822, by which, after some special bequests, he devised his lands to his wife, J. Mackey, the defendant in error, and his seven children, to be equally divided among them ; and conferred on his wife a control of the land devised to his children, until they should marry, or attain the age of twenty-one years. Under the will, letters

testamentary were granted to J. Mackey and Antoine Soulard, the executrix and executor named in the same. This suit was commenced by J. Mackey, as surviving executrix of the last will and testament of James Mackey, deceased. Burdyne, the defendant, attempted to show an outstanding title in others, by the production of evidence of a grant of the same land to one Clamorgan, by lieutenant governor Trudeau; and also relied on the length of his possession, which commenced, as it appears from the evidence, in the year 1816.

The principal question arising from the facts here set forth and presented to the court for its determination, is, whether an executor or administrator, *as such*, can maintain an action of ejectment for lands of which his testator or intestate died siezed: or, in other words, whether, upon the death of an individual, the lands of which he was seized will descend to his executor or administrator, or to his heirs? It is not pretended that such a claim for the executor or administrator has any countenance from the common law. By that law the executor or administrator was only entrusted with the personal estate. This included leases of terms of years; and for them he might maintain an ejectment: But the executor or administrator, as such, had nothing to do with freehold estates. This right must be derived from statute, and it must be supposed that such an innovation, so much at war with the opinion of all those instructed in the science of the common law, the introduction of which into our code must unsettle and disturb so many principles heretofore established, should derive its existence, not from mere implication, but from express enactment. Reference has been made to laws which regulate the administration of the real estate of a deceased person, at a period prior to the introduction of the common law into this State, in order to lay some foundation for the right of the executor or administrator to maintain an ejectment. But it must be obvious, that since the introduction of the common law, an event which took place in the year 1816, this question must be determined by reference to its principles, and the statute laws now in force, and not by any laws, usages, or customs which may have prevailed here before that time. The phraseology of the sta-

tute regulating descents, so far from favoring this right, is rather against it, as it casts the descent of the lands on the heirs, subject to the payment of debts. The provisions of the administration law, authorising the administrator to take possession of the title papers relating to lands, and requiring him to inventory the real estate, and give a bond, whose penalty shall cover both the personal and real estate, are not sufficient to warrant the implication that the title to the land vests in him. The lands of a deceased person may, under certain circumstances, be sold by the administrator or executor ; hence, it would seem proper that his bond should cover the land, as the proceeds arising from the sale of it would go into his hands. The authority of the executor or administrator to lease the lands of the testator or intestate, under the direction of the county court, and to repair buildings, fences, &c., has been mostly relied on by the appellee, as sustaining her position. But is not the argument in favor of this power derived from these provisions, more than countervailed by the 11th section of the act concerning judgments and decrees, which declares that when the plaintiff in a judgment shall die, if it concern the personalty, it shall survive to his executors or administrators : if real estate, then it shall survive to his heirs or devisees. In this instance, the legislature seems to have had this matter before it, and its language is equivalent to an express declaration that on the death of an individual, his lands descend to his heirs, or pass to his devisees, and not to his executors or administrators. Again, has not the legislature in view the distinction between real and personal actions, in the second section of the fifth article of the act regulating practice at law, and does it not contemplate that the former shall be carried on by the heirs and devisees, and the latter by the executors and administrators, when it is declared that if "there is but one plaintiff in an action, and he shall die before final judgment, such action shall not be thereby abated, if it might be originally prosecuted by the heirs, devisees, executors, or administrators of such plaintiff, but such of them as might prosecute the same cause of action originally, may continue such suit upon the order of the court, substituting them as

plaintiffs therein?" It has well been asked, what interest in the land does the executor or administrator take? Is it a freehold estate, or is it less than a freehold? When does it determine? Is there any rule to ascertain its precise duration, or is it dependant on the varying circumstances of the administration of each individual's estate? We cannot but think so great an encroachment on the rules of the common law, must have an express legislative sanction, or an acquiescence in it must be rendered necessary, in order to give effect to plain and obvious legal enactments. No such necessity is conceived to exist, and it may well be questioned whether the convenience of prosecuting an action of ejectment in the name of the executor or administrator, is so much superior to the accustomed mode, as to countervail the objection to the introduction of a principle in our jurisprudence, whose consequences cannot be foreseen.

From the view we have taken of this subject, we do not deem it necessary to determine the question whether the lands confirmed to Mackey, or his legal representatives, by the act of July 4th, 1836, passed by his will, which was executed in 1822. Even admitting that the land did pass, yet as the appellee in her declaration has claimed the land *as executrix*, and has asserted her rights to the possession of it by virtue of her representative character, and no other, it would be a variance to permit her to recover as devisee or legal representative. 2 Starkie, 308. It is not intended by this to shake the authority of those cases in which it has been held that when the words executor or administrator are used as a mere description of the person, and may be rejected as surplusage, the plaintiff will be entitled to recover in his individual right, although he may be termed executor or administrator in the declaration. In the case before the court, the appellee has placed her right of recovery on the ground of her bearing the character of executrix, and failing to sustain the right asserted, it would operate as a surprise if she were permitted to turn round and claim the land on another and a different right. The case of Bagnell et al. v. Broderick, (13 Peters,) has been relied on as an authority supporting a contrary doctrine. That action was

commenced against Bagnell, and afterwards Morgan Byne, on motion, was made a co-defendant. Byne died, and his executors were substituted as defendants. A judgment *de bonis propriis* was rendered against the executors, and it was assigned for error. It is clear, the question of a variance did not and could not arise ; and that case is unlike the one now under consideration. A plaintiff in ejectment must recover on the title set forth in his declaration. The defendant, however, is not confined to any one defence, but under the plea of not guilty, may show any thing to defeat the plaintiff's action, and if he is foiled in one defence he may resort to another. The court says, "the executors of Morgan Byne had no interest in the land by virtue of their letters testamentary, but could well have an interest by the will of their testator. On no other ground could they properly have been permitted to come in and defend in the character of executors."

The appellant did not insist on the outstanding title he attempted to set up, and nothing will be said in relation to it. As to the length of possession relied on by him, it will be borne in mind, that the legal title to the land was in the general government, and no possession, however long continued, would give a title against it. No laches nor neglect is imputable to the government, nor is it included in any statute of limitations, unless expressly named. If Mackey's claim was of a character, that it could not be asserted in a court of justice, and he was consequently without remedy under our laws, he would seem then to be in the situation of those against whose claims the courts of justice have been barred, during which time, it has been held, the statute of limitations does not run. McIver v. Ragan, 2 Whea.

Judgment reversed.