BERNARD KELLY, Respondent, *v.* JAMES B. CLANCY,
Appellant.

May 27, 1884.

1. FORCIBLE ENTRY AND DETAINER — ACTIONS, PARTIES TO. — A person who acquires the right of possession of premises from one who has a right of action for forcible entry and detainer, takes the remedy also.

2. —— ASSIGNMENT — LEASE. — A lessee who has not been in possession under his lease is, within the meaning of the statute, an " assign " of the owner and lessor.

3. —— DEMAND. — If it appears that the defendant knew that the plaintiff was the lessee of the premises, a judgment will not be reversed because it does not affirmatively appear that the plaintiff exhibited his lease when restitution was demanded.

4. —— JUDGMENT — EXECUTION — SHERIFF'S DUTY. — A judgment for the plaintiff, a lessee, in unlawful detainer, being for double the rental value until restitution, and restitution being impossible, on execution, by reason of the expiration of the lease, the sheriff must compute the damages for the time during which restitution could have been made.

5. —— EVIDENCE — A judgment for the possession, by the owner against the lessee dated during the term of the lease, the execution of which is stayed, is properly excluded.

6. —— PRACTICE. — Unless objections to the introduction of evidence are specific the question will not be reviewed on appeal.

7. —— INSTRUCTIONS. — Erroneous instructions which can not prejudice the jury, do not furnish ground for the reversal of the judgment.

APPEAL from the St. Louis Circuit Court, LUBKE, J.
*Affirmed.*

W. C. MARSHALL, for the appellant: The complaint alleges that defendant obtained the possession by disseisin, but it does not allege that the plaintiff ever was in possession of the premises or that defendant disseised the plaintiff, both of which are necessary in this action. — *Hatfield* v. *Wallace*, 7 Mo. 112; *Warren* v. *Ritter*, 11 Mo. 354; *Spalding* v. *Mayhall*, 27 Mo. 377; *McCartney* v. *Alderson*, 45 Mo. 35. The lease from Peck to Kelly did not vest the possession in Kelly. It gave him only a right of posses-

siou. — *Mechan* v. *Walsh*, 6 Mo. 346. Defendant is not
estopped in this action from disputing plaintiff's title, for
the relation of landlord and tenant never existed between
them. — *May* v. *Luckett*, 53 Mo. 437.

C. M. NAPTON, for the respondent: Kelly having
leased the house from Peck, landlord, was entitled to bring
this suit. — Rev. Stats., sect. 2453; *Burns* v. *Patrick*, 27
Mo. 434; *L'Hussier* v. *Zallee*, 24 Mo. 13; *Warner* v. *Rit-
ter*, 11 Mo. 354; *McCartney* v. *Alderson*, 45 Mo. 35; *s. c.*
49 Mo. 456. Possession of part of the premises, with a
claim on the whole, is enough to entitle plaintiff to main-
tain the action. — *Bartlett* v. *Draper*, 23 Mo. 407; *Hardesty*
v. *Glenn*, 32 Ill. 62; 32 Ill. 417; 28 Ill. 387. Or the legal
possession of lessor after expiration of the lease, is suffi-
cient. — *Warren* v. *Ritter*, 11 Mo. 354; Taylor's L. & T.,
sect. 790, notes, and 789.

L. J. SMITH, for the respondent.

THOMPSON,, J. delivered the opinion of the court.

This was an action of forcible entry and detainer. On
trial anew in the circuit court the plaintiff had a judg-
ment.

The complaint is in the following language: " Bernard
Kelly states that on the 1st day of March, 1882, he had the
legal right to the possession of a certain two-story brick
building, together with the room adjoining in the rear, and
room adjoining on the east side of said two-story building,
situated on the northeast corner of Poplar and Fourteenth
Streets, in block No. 215 W., in the city of St. Louis, and
in the Seventeenth Ward thereof, and state of Missouri,
and that James B. Clancy, on the day and year aforesaid,
wrongfully and without force by disseisin, obtained and con-
tinues in possession of said premises, after demand made
in writing for the delivery of the possession thereof. Plain-
tiff further states that he sustained damages by reason of
the unlawful detainer aforesaid, in the sum of $100, and

that the value of the monthly rents and profits of said tenement are $60. Wherefore the complainant prays judgment of restitution, and ·for his damages, and the value of the rents and profits of the premises aforesaid.''

I. At the commencement of the trial, the defendant objected to the introduction of any evidence in the case, on the ground that the complaint did not state facts sufficient to constitute a cause of action against the defendant. This objection was overruled, and the exception to this ruling presents the first question which we have to consider. The ground of objection to the complaint is, that it alleges that the defendant obtained possession by disseisin, but it does not allege that the plaintiff ever was in possession of the premises, or that the defendant disseised the plaintiff; and a number of old cases have been cited to sustain this proposition. This was the law prior to our revision of 1855. *Blount* v. *Winwright*, 7 Mo. 50; *Hatfield* v. *Wallace*, 7 Mo. 112; *Warren* v. *Ritter*, 11 Mo. 354; *Holland* v. *Reed*, 11 Mo. 605; *Picot* v. *Masterson*, 12 Mo. 303; *Holliday* v. *Doyon*, 15 Mo. 407. Formerly, where the person having the legal right to possession had never himself been in possession, he could not, it seems, maintain an action of forcible entry and detainer, or of unlawful detainer, but was put to his ejectment. *L'Hussier* v. *Zallee*, 24 Mo. 13, 14; *McCartney* v. *Alderson*, 45 Mo. 35, 38. But the legislature, in 1855, in enacting the revision of 1855, changed this rule by inserting the following two sections: '' Heirs, devisees, grantees, and assigns of any lands, tenements, or other real possessions, shall be entitled to the same remedies againt persons who were guilty of forcible entry and detainer, or unlawful detainer of such lands, tenements, or other real possessions, before the descent, devise, grant, or assignment thereof, as the ancestor, devisor, grantor, or assignor, was entitled to by virtue of this act.'' Rev. Stats. 1855, p. 794, sect. 36.

'' If any lessor of any lands, tenements, or other real pos-

sessions, shall die or shall grant or assign such land or tenements or other real possessions, before the expiration of the term for which they were demised or let, his heirs, devisees, grantees, or assigns, shall have the same remedies against any person guilty of an unlawful detainer, by holding over such lands, tenements, or other real possessions, after the term for which they were demised or let, as such lessor would have had if he had not died, or had not granted or assigned said lands, tenements, or other real possessions." *Ibid.*, sect. 37. These provisions were retained in the revision of 1865 (Gen. Stats. 1865, p. 733, sects. 36, 37), and have passed without substantial change into the Revised Statutes of 1879. Rev. Stats. 1879, sects. 2453, 2454. The rule both before and since the statute has always been that no one could maintain an action except the party having the lawful right of possession, and the third section of the statute gives the action to such person in terms. Rev. Stats., sect. 2420. Accordingly, it was held before the statute, that where the owner of premises in possession of A leased them to B, the owner could not thereafter maintain unlawful detainer; the right of action went to his lessee; and as the statute did not allow him to maintain unlawful detainer, because he had never been in possession, he must bring ejectment. *L'Hussier* v. *Zallee*, 24 Mo. 13.

That is precisely where the argument of the learned counsel for the defendant, overlooking the statute of 1855, would land this case; for the facts of this case, without contradiction were as follows: That on the 23d of February, 1881, this plaintiff was carrying on the saloon business in the premises in question, renting the whole tenement from Mr. Peck, and living in the upper rooms with his family. He could not read and write, and he wanted some one with him in the business who could; he, therefore, took the defendant into the business with him for one year. This partnership expired on the 22d day of February, 1882. Before the arrival of this date, the plaintiff and the defendant had a disagreement, and on that day the defendant

turned the plaintiff out of the saloon, barred him out, and notified him in writing that the partnership was dissolved, and thereafter kept him out of the saloon, retaining in possession the saloon fixtures, and carrying on the business for himself exclusively — the plaintiff, in the meantime, continuing to reside in the upper rooms with his family. The plaintiff, desiring to carry on the business alone at the same place, as he had previously done, went to the agent of Peck and obtained a lease of the premises, beginning on the 1st of March, 1882, the date of the expiry of the lease under which he and the defendant had held, as he might lawfully do. This entitled him to possession on the 1st of March, 1882, to the exclusion of the defendant. If the defendant's contention is correct, Peck could not maintain this action against the defendant, because he had parted with his right of action by making the lease to the plaintiff, and the plaintiff could not maintain it, because he had never been in possession. It would follow that no one could maintain it; but that this plaintiff would be driven to an action of ejectment. The cases show that it was to remedy just such inconveniences as this, and to eliminate such an incongruity from our law, that the two sections above quoted were enacted. *McCartney* v. *Alderson*, 45 Mo. 35; *Gillett* v. *Mathews, Id.* 307; *Young* v. *Smith*, 28 Mo. 65; *Pentz* v. *Kuester*, 41 Mo. 447; *Kaulleen* v. *Tillman*, 69 Mo. 510. It is not claimed on behalf of the the defendant, that this plaintiff is not a " grantee " or " assign " of a real possession, within the meaning of section 2453 of the Revised Statutes. Indeed, the defendant's argument makes no allusion to this statute at all. There is no doubt whatever, that the plaintiff is a " grantee " or " assign " of a " real possession," within the meaning of the statute. The legislature, out of abundant caution, and for the purpose of making its meaning more clear, added to the sections, which we have above quoted, the following : " Executors or administrators of a decedent,

holding a chattel interest in lands, tenements, or other real possessions, shall have the same remedies as are hereby granted to heirs, devisees, grantees, or assignees.'' Rev. Stats., sect. 2455. A similar provision is found in our statute relating to administration. *Ibid.*, sect. 129. Before this statute, an executor or administrator could maintain ejectment for a chattel interest in lands, which included a lease for a term of years ; though he could not for a freehold, for that descended to the heirs, and the executor or administrator had nothing to do with it. *Burdyne* v. *Mackey*, 7 Mo. 374. This statute enables him to maintain forcible entry and detainer, or unlawful detainer, where formerly he was obliged to bring ejectment. *Lass* v. *Eisleben*, 50 Mo. 122.

The statute we are here considering (Rev. Stats., sects. 2453, 2454) must be construed *in pari materia* with the other provisions of the forcible entry and detainer act, into which it was originally introduced as an amendment. This act does not relate to or concern itself with the title to property, but only relates to the right of possession. Its third section, as already stated, confers the right of action upon ''the person having the legal right to such possession.'' It follows that the amendment of 1855 must have meant that a grant or assignment of any interest in lands, tenements, or other real possessions, should carry with it the right to maintain this action without reference to the extent or quanity of the interest granted or assigned, provided it were sufficient to carry with it the right of possession. If this were not so an executor or administrator having a chattel interest in land, of brief and uncertain duration, might maintain this action, while the owner of a leasehold for ninety-nine years would be driven to ejectment. The grant or assignment named in the statute may be that of the entire fee ; it may be an assignment of a short term ; it may be an assignment by operation of law of a mere temporary right of possession and control, as where an

estate passes into the hands of a receiver, an assignee in insolvency, or the guardian of a lunatic.   In all these cases the person to whom such right of possession passes is the " assign " of a " real possession," within the meaning of the statute.   It is true that a lease is regarded, in a technical sense, not as passing an estate in land, but a mere chattel interest.   But it does not follow from this, that the word " assign " in the statute is not to be so interpreted as to include a lease.   Our decisions show that the terms employed in our statute of forcible entry and detainer are not to be interpreted according to their technical meaning at common law.   *Warren* v. *Ritter*, 11 Mo. 227.   The statute has no reference to quantity of estate ; it refers merely to the right of possession ; and whatever interest in the land would support the right of possession on the part of an original lessor, will, if assigned, support such right on the part of the assignee.   The meaning is that whenever a person having a right to maintain against another such an action, parts with his right to the possession for any length of time, be it long or short, the person to whom he parts with it is entitled to the same remedies which the law gave to him.

II. It is next objected that the court erred in admitting certain evidence, as follows : —

1. The testimony of the plaintiff to the effect that the defendant ousted him of the possession of the room in question on the 22d of February, 1882. .  No objection was made to this testimony in the court below.

2. The lease from Peck to the plaintiff for the year commencing March 1, 1882.   The grounds on which it is now claimed that the court erred in admitting this lease are : —

(1.) That the lease commences on the 1st of March, 1882, and that evidence of a disseisin prior to that time does not entitle it to be admitted.   It is true that the disseisin which took place on the 22d of February has no connection with this lease, because the possession was then

held under a lease from Peck made to Clancy and Kelly as partners, which had still a week to run.  The wrong of that disseisin expired with the expiration of the lease under which the plaintiff had a right of possession in common with the defendant.  Evidence of that disseisin must, therefore, be regarded as irrelevant and unimportant, so far as the legal rights of the parties under the subsequent lease were concerned.  It has no influence on such rights one.way or the other.  If there had been no such disseisin, as the lease under which Clancy held expired before Kelly took out the new lease in his own name, Clancy's right of possession ceased, and Kelly was thereafter entitled to possession as the assignee of Peck.

(2.)  Another- ground on which it is now claimed that the lease was improperly admitted in evidence is, that it was not shown that the lease had ever been exhibited by the plaintiff to the. defendant.  It is sufficient to say that this ground of objection was not taken in the court below.

(3.)  The third ground is that there had been no demand of possession.  We need not discuss this, because it was not made a ground of objection to the lease in the court below.

III.  At the close of the plaintiff's evidence, the defendant moved for an instruction that the plaintiff could not recover.  The grounds on which it is contended that this instruction ought to have been granted, have already been considered.  The last ground — that the plaintiff had never exhibited the lease to the defendant, should have been taken when the lease was offered in evidence.  The statute which it is supposed required an exhibition of the lease is found in the chapter of the Revised Statutes relating to landlords and tenants, and is as follows : " If any person purchase lands or tenements, occupied at. the time of such purchase by any tenant, lessee or sub-lessee, who shall at any time thereafter fail to pay rent to such purchaser, the person purchasing such property shall have the right, upon such failure, to commence proceedings before a justice of

the peace to recover possession, as above provided.'' Rev. Stats., sect. 3103.

'' Before such proceedings are commenced, the plaintiff, or his agent, shall make a demand of rent, as provided, and, at the time of making the demand, shall exhibit to the tenant, or person in possession of the premises, the deed under which he claims title, and if payment be then refused, the owner may commence his action, as aforesaid.'' *Ibid.*, sect. 3104.

It appears that these provisions relate to demand of payment of rent; they have no reference to a case like the present, where the purchaser or assignee does not demand rent, but demands unqualified possession. We do not wish, however, to be understood as holding that an assignee of the lessor would not be bound to exhibit his deed or lease to the party in possession, if the fact of its existence were unknown to such party. On general principles of law, if a stranger to the party in possession, to whom he stood in no privity of contract in respect of the premises, should demand possession of him, the latter would be entitled to know by what authority the demand was made. In this case, the evidence leads to the inference that the defendant knew of the fact of the plaintiff having obtained this lease; for the defendant had tried to obtain such lease, and failed. They were living in the same house, the defendant keeping the business portion from which he had expelled the plaintiff, and the plaintiff and his family occupying the rooms upstairs. They were quarreling about the matter of their partnership. The defendant, it appears, had made several attempts to obtain a renewal of the lease which the plaintiff had obtained. It is scarcely credible that, under these circumstances, he should not have known that the new lease had been granted to the plaintiff. The most natural thing for Mr. Peck's agent to say, when Clancy applied for this renewal, would have been that he could not grant it because he had already granted it to Kelly. At all events, in order

to make the failure to exhibit this lease to him at the time of demanding possession a defence to this action, it was clearly incumbent on the defendant to set up such a defence in the court below, either by making it a ground of objection to the lease when it was offered in evidence by the plaintiff, or by asking an instruction to that effect. Not having set up this defence at the trial, he can not, upon well settled principles, set it up here ; and therefore we are clear that the fact that no direct proof is found in the record that the defendant knew that this lease had been granted to the plaintiff furnishes no ground upon which we ought to reverse the judgment.

IV. The court excluded a certified copy of a judgment for possession of these premises, and damages recovered by Peck against this plaintiff on the 18th day of August, 1882. The ground on which it is claimed that this ought to have been admitted, is that it shows that the plaintiff's right to possession terminated on that day, and that he had no right to any damages from the defendant accruing thereafter. This objection is not well taken, for the reason that the certified copy of the justice's judgment shows that, after the entry of judgment, a further entry was made as follows : " Execution and restitution stayed by order of plaintiff until further notice." It does not appear that any execution of this judgment in favor of Peck and against this plaintiff, was ever taken out. If such had been the fact, undoubtedly the defendant would have shown it, as he could have done by the justice's docket entries. On the contrary, the docket entry above quoted indicates that, after judgment, some arrangement took place between Peck and the plaintiff ; and, accordingly, the mere fact that Peck had recovered a judgment against the plaintiff for restitution of the premises, rents and damages, was wholly immaterial to the issues in this case. If the defendant had shown that Peck had ousted the plaintiff — had actually entered — it would have been different.

V. The next objection is that the court erred in giving the two following instructions : —

" The court instructs the jury that, if from the evidence they believe that, prior to March 1, 1882, plaintiff and defendant were partners, and, as such, were jointly in possession of the premises in controversy ; that such partnership had terminated either by limitation or by dissolution ; that plaintiff, for himself alone, and not for such partnership, had obtained from the landlord of said premises the lease beginning March 1, 1882, which has been read to you ; that, being in possession of said premises with defendant, the plaintiff, under such lease so obtained, demanded exclusive possession of said premises, and that defendant ousted plaintiff therefrom, — then plaintiff is entitled to recover in this action."

" If the jury believe from the evidence that, at this time when the plaintiff demanded, in writing, of defendant the possession of the premises in controversy, he was entitled to the possession of the same, as stated in the other instruction given you, and that the defendant dispossessed plaintiff, and wrongfully withheld possession thereof, and continued to hold the same after such demand for delivery of the possession to the plaintiff, then the jury will find the defendant guilty as charged ; and if the jury so find, they will further find the amount to which he has been damaged, and also the value of the monthly rents and profits of said premises."

The objection which is made to these instructions is that they assume that the plaintiff and defendant, after March 1st, were in joint possession of the premises, whereas, the evidence showed that the defendant had ousted the plaintiff on the 22d day of February. The instructions may be liable to verbal criticism, but they contain no proposition which could mislead the jury ; because, indeed, the case was one where, upon undisputed evidence, there was nothing for the jury to do but to assess the damages. The defendant

offered no defence whatever; did not offer a word of testimony to justify or palliate the outrage which he had committed on the plaintiff. The case is, therefore, one in which a verdict for the plaintiff was the only verdict which could rightfully have been rendered under the evidence. It is a case in which we are commanded by statute to disregard any error or defect in the proceedings, and not to reverse the judgment by reason of such error or defect. Rev. Stats., sect. 3569.

VI. The last objection is that the verdict is excessive. The verdict was for $600 damages, and the jury also found the monthly rental value of the tenement to be $60. The court, under the statute, rendered judgment for $1,200, double the sum assessed by the jury, and also for damages at the rate of $120 a month, the same being double the monthly rental value found by the jury, from the date of the judgment until restitution should be made. The plaintiff afterwards entered a *remittitur* of $500 of the amount of damages assessed by the jury, leaving the same at $100, the amount laid in the complaint. The court entered judgment for restitution; and, doubling this amount of damages under the statute, finally entered judgment for $200, the same being double the residue of the sum of the damages assessed by the jury after the *remittitur*, and also for damages at the rate of $120 per month, the same being double the monthly rental value of the premises, as found by the jury, until restitution should be made. There was substantial evidence to support these findings, both as to the damages sustained by the plaintiff and as to the rental value of the premises. We can not, therefore, set aside the judgment on this ground.

VII. A difficulty, however, presents itself, which does not seem to have occurred to the parties, or to the learned judge who tried the case in the circuit court. The only title which the plaintiff has exhibited to possession, is a lease for one year from the 1st of March, 1882. Upon

this title, he is not entitled to recover double the amount of the rental value of the premises for a longer period than until the 1st of March, 1883. He may, in the meantime, have been ejected by his own landlord, Mr. Peck, under the judgment for restitution which the defendant offered in evidence, and which was excluded as above stated.

Upon a closer examination, these circumstances do not, however, seem to exhibit any greater difficulty than is liable to arise in any action of forcible entry and detainer or unlawful detainer, where the judgment is given for the plaintiff, an appeal taken to this court, and restitution is made, or rendered impossible, before the determination of the appeal. The defendant, notwithstanding such an appeal, and while it is pending, may, of course, make restitution to the plaintiff; or the plaintiff's title may be determined, or other circumstances may intervene which will render the making of restitution impossible. The statute does not provide for these contingencies. The rules of appellate procedure require us to consider nothing except what appears upon the record which is sent to us from the court below. We can not, as a general rule, hear evidence of any matters which have arisen subsequent to the appeal, because, if we were to do so, we should, to that extent, cease to exercise the office of an appellate court, and act in the exercise of an original jurisdiction, which, in ordinary cases, we do not possess. The judgment of the circuit court in this case, following the statute, gives the plaintiff double the rental value until restitution is made by the defendant. Under this judgment, as in every other case under such judgments, the time when restitution is made is a fact which must be fixed by some one subsequently to the rendition of the judgment. It is supposed that the clerk, in issuing the execution will frame the writ so that it shall merely follow the terms of the judgment; and that the time when restitution is or has been made, will be determined by the sheriff in executing the writ, upon evidence *in pais*, and that the amount demanded and collected by him under the command of the writ which

requires him to collect double the rental value therein .named until restitution is made, will be computed by him from such evidence. So, if, before the writ has come into his hands a circumstance has arisen making a restitution impossible, as, in this case the determination of the plaintiff's title, he will, in making such computation, extend it only over the time during which restitution could have been made to the plaintiff since the rendition of the judgment. If he makes an erroneous computation and demands too much or too little, either party, it seems, has a sufficient remedy by motion in the court from whose judgment the execution issued, to recall and correct the execution, or direct the proper manner of its enforcement. The well known principle that every court has full control over its own process, to prevent its erroneous use or abuse, seems an ample provision against any embarrassments which may arise in a case like the present. The judgment follows the statute; and we think it best to affirm it as it has been rendered, and to leave the court in which it was rendered to see to its proper execution, without anticipating and attempting to provide against difficulties which may not arise. The judgment is accordingly affirmed. All the judges concur.